UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

*Caption in Compliance with D.N.J. LBR
9004-2(c)*

Ciardi Ciardi & Astin
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

| In Re:<br><br>Grove Street Realty Urban Renewal, L.L.C.<br><br>           Debtor. | Case No.:   <u>10-30427</u><br>Judge:     <u>Judith H. Wimur</u><br>Chapter:      <u>11</u> |

**DISCLOSURE STATEMENT RELATED TO THE PLAN OF REORGANIZATION
PROPOSED BY GROVE STREET REALTY URBAN RENEWAL, L.L.C.
THE DEBTOR AND DEBTOR -IN-POSSESSION**

Dated: October _1_ 2010

**Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103
T: (215) 557-3550
F: (215)557-3551
Email: aciardi@ciardilaw.com
Email: jcranston@ciardilaw.com
Email: aroth@ciardilaw.com
Attorneys for the Debtor and Debtor-
In-Possession**

1

# TABLE OF CONTENTS

Page

I. GENERAL BACKGROUND .................................................................................1

BRIEF EXPLANATION OF CHAPTER 11 ....................................................1

DISCLAIMERS.......................................................................................................2

VOTING PROCEDURES ....................................................................................2
 A. Persons Entitled to Vote on Plan ...................................................2
 B. Hearing on Confirmation ...............................................................3
 C. Acceptances Necessary to Confirm Plan.......................................4
 D. Confirmation of Plan Without the Necessary Acceptances.........5

II. FINANCIAL CONDITION OF DEBTOR ...........................................5
 A. Liquidation Value of the Debtor ...................................................5

III. SUMMARY OF PLAN OF REORGANIZATION .........................................7
 A. Classes of Claims and Interest........................................................7
 B. Treatment of Classes of Claim ......................................................7
 C. Administrative Claims......................................................................11
 D. Treatment of Priority Tax Claims...................................................13
 E. Provisions for Execution of the Plan ............................................13

IV. PROJECTIONS AND FEASIBILITY ...............................................................14

V. COMPARISON OF LIQUIDATION VS. REORGANIZATION .....................14

VI. TREATMENT OF EXECUTORY CONTRACTS ..........................................14
 A. Assumption........................................................................................14
 B. Damages ..............................................................................................14
                   14

VII. EFFECT OF CONFIRMATION ........................................................................15
 A. Injunction...........................................................................................15
 B. Term of Injunctions or Stays ..........................................................15
 C. Injunction Against Interference with Plan....................................16

VIII. CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST .............16

IX. MODIFICATION OF THE PLAN.....................................................................16
 A. Pre-Confirmation Modification .....................................................16
 B. Pre-Consummation Modification ...................................................16
 C. Non-Material Modifications ...........................................................16

X. RETENTION OF JURISDICTION....................................................................17

XI. CAUSES OF ACTION .........................................................................................18

|         | A. | Powers .................................................................................................... | 18 |

| **XII.** | OBJECTIONS TO CLAIMS ......................................................................... | 18 |
|          | A. | Objections to Claims ........................................................................... | 18 |
|          | B. | Contested Claims ................................................................................. | 18 |

| **XIII.** | CHOICE OF LAW ...................................................................................... | 19 |

| **XIV.** | EXCULPATION ........................................................................................... | 19 |

| **XV.** | MISCELLANEOUS ...................................................................................... | 19 |
|         | A. | Payment of Statutory Fees ................................................................. | 20 |
|         | B. | Discharge of Debtor ........................................................................... | 20 |
|         | C. | Discharge of Claims ........................................................................... | 20 |
|         | D. | Effect of Confirmation Order ........................................................... | 21 |
|         | E. | Severability ......................................................................................... | 21 |
|         | F. | Successors and Assigns ...................................................................... | 21 |
|         | G. | Binding Effect ..................................................................................... | 21 |
|         | H. | Governing Provisions ......................................................................... | 21 |
|         | I. | Filing of Additional Documents ...................................................... | 22 |
|         | J. | Withholding and Reporting Requirements ..................................... | 22 |

## I.    GENERAL BACKGROUND

Grove Street Realty Urban Renewal, L.L.C. (the "Debtor") provides this Disclosure Statement ("Disclosure Statement") to all of its known Creditors and "Interest Holders" entitled to same pursuant to section 1125 of title 11, as amended (the "Bankruptcy Code") in connection with the Plan of Reorganization (the "Plan") filed by the Debtor.   A copy of the Plan accompanies the Disclosure Statement.  The purpose of this Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Plan.  The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATION CONCERNING THE DEBTOR-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED. ALL FINANCIAL INFORMATION IS BASED UPON THE DEBTOR'S REPRESENTATIONS.**

On July 1, 2010, the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.  Upon the filing of its petition, the Debtor automatically became a debtor-in-possession and since that time has conducted its business in that capacity.

1

## BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal business reorganization section of the United States Bankruptcy Code. Pursuant to Chapter 11, a Debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders.

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and its affairs. Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

## DISCLAIMERS

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF THE STATEMENT AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY OR AT THE INSTANCE OF PLAN PROPONENT.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FORM ACTUAL FUTURE EXPERIENCES. SUCH ESTIMATES AND ASSUMPTIONS ARE MADE FOR INFORMATIONAL PURPOSES ONLY.

## VOTING PROCEDURE

The United States Bankruptcy Court has reviewed this Disclosure Statement and entered an Order determining that this document contains "adequate information" such that creditors can meaningfully evaluate the Plan. A copy of the Bankruptcy Court Order approving the Disclosure Statement is included in this package. Only after creditors have had an opportunity to vote on the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
Ciardi Ciardi & Astin
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA 19103

BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00 P.M. ON _____, 2010 TO BE COUNTED IN THE VOTING.  BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.

THE DEBTOR RECOMMENDS A VOTE "FOR ACCEPTANCE" OF THE PLAN.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with Section 1125 of the Bankruptcy Code and is provided to all of the known holders of Claims against the Debtor whose Claims are impaired under the Plan and to each Interest holder of record.  The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

A.    **Persons Entitled to Vote on Plan**

Only the votes of classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan.  Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of their claims.

In determining the acceptance of the Plan, a vote will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot Form does not constitute a proof of claim. If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtor's Schedules which are on file in the Bankruptcy Court, but it is suggested that you file a Proof of Claim. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### B.     Hearing on Confirmation

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### C.     Acceptances Necessary to Confirm Plan

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class. Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such class members would receive or retain

if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.    <u>Confirmation of the Plan Without the Necessary Acceptances</u>

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes. This provision is set forth in Section 1129 (b) of the Bankruptcy Code and requires that, among other things, the claimants must either receive the full value of their claims or, if they receive less, no class with junior liquidation priority may receive anything. To satisfy this Section, as it applies to unsecured creditors, if that class has rejected the Plan, the Plan must propose to pay the class their allowed claims in full, or no junior class may retain its equity interest. Courts have called this requirement the Absolute Priority Rule. An exception has developed to the Absolute Priority Rule. That exception would allow a class, junior to the unsecured class, to retain or receive equity if that junior class infuses new money into the Debtor which is necessary to the reorganization and the new money has a value similar to the value being retained. In order to determine the market value of the retained equity and whether then new money is equal to it, the Debtor will value the company as a going concern at this Confirmation Hearing.

## II.    <u>FINANCIAL CONDITION OF DEBTOR</u>

### A.    <u>Liquidation Value of the Debtor</u>

The assets of the Debtor are the following:

<u>Assets</u>

| | |
|---|---|
| Office Equipment | $129,000 |
| Real Property | $43,500,000 |
| <u>Total Assets</u> | $ <u>43,629,000</u> |

The assets listed above are based upon the amounts shown in the Liquidation Analysis prior to any discounts on liquidation or costs of liquidation.  These are different from the amounts on the Summary of Assets and Liabilities in the Debtor's Schedules which reflected the book value.  The numbers set forth above have been not discounted by the Debtor to adjust for what the Debtor would realize from an actual sale of the assets if sold at auction. Those discounts are addressed in the Liquidation Analysis. Debtor directs reader to the liquidation analysis for a more complete analysis. The Liquidation Analysis is attached hereto and incorporated herein as Exhibit "A" and solely represents the Debtor's estimate of the results of liquidation.   An appraisal of the Debtor's real estate was obtained by the Committee and such appraisal is attached to the Liquidation Analysis.

The liabilities of Debtor are as follows:

Secured Debt
GE Business Financial                    $32,328,683.00

TD Bank                                  $3,000,000.00

Tax Claims
West Deptford Township Tax                 $385,104.00

Unsecured Debt
Unsecured Non-priority Claims            $1,644,424.03

Total Liabilities                        $37,358,211.03

All liabilities are taken from the filed proofs of claim or the Schedules and have been adjusted to reflect Debtor's belief.

III.    **SUMMARY OF PLAN OF REORGANIZATION**

The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself. The Plan, if confirmed, will be binding upon the Debtor, its creditors and shareholders. All creditors are urged to carefully read the Plan.

A.    **Classes of Claims and Interest**

The Plan divides Claims and Interests into various separate classes. Under the Plan, there are six separate classes of creditors (classes 1 through 6).

B.    **Treatment of Classes of Claim**

1.    **Class 1.**    **Priority Claims.** Class 1 is not impaired. Except as otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens.

Class 1 Priority Claims shall receive one hundred (100%) percent of their claim on the Effective Date.

2.    **Class 2.**    **Secured Claim of GE.** Class 2 consists of the claim of GE secured by a first mortgage on the residential and undeveloped land of the Debtor's real property located at 370 & 420 Grove Avenue, Thorofare, New Jersey 08086.

A.    The Class 2 Creditor is a secured creditor in the amount of $32,328,683 which is secured by a first lien on the residential and undeveloped land of the Debtor's real property. The class 2 creditor shall receive the following treatment as well as a negative stock pledge on the Debtor's commercial and undeveloped land. The Debtor's commercial land is located at 196 Grove Avenue, Thorofare, New Jersey 08086.

(i)    The existing claim of GE shall be paid as follows:

7

(a)    Debtor shall make interest only payments for twelve months following the Effective Date. The rate shall be the non-default rate in effect on the Effective Date.

(b)    Commencing with the payment due on the thirteenth month following the Effective Date, the Debtor shall make a monthly payment of principal and interest using a twenty-five year amortization schedule. The interest rate shall be the non-default rate.

B.    The Debtor shall provide additional collateral to GE as follows:

(i)    A lock box into which tenants will send monthly rent to GE to be deposited into an account in the name of GE f.b.o. Debtor;

(ii)    The monthly rent payments will thus be held by GE as collateral;

(iii)    The funds will be released as requested by the Debtor to pay for documented operating expenses and debt service;

(iv)    Any shortfalls in operating expenses are the responsibility of the Debtor. The Debtor shall fund all operating expenses shortfalls within thirty days of the close of any given month;

The Debtor shall have the right to pre-pay the outstanding loan balance at any time during the floating rate or fixed rate period without penalty. GE shall permit a distribution of excess cash only after achieving minimum debt service coverage of 120% for a minimum of twelve (12) consecutive months.

3.    **Class 3.**    **Secured Claim of TD Bank.** Class 3 shall consist of the first lien position of TD Bank on the Debtor's commercial property located at 196 Grove Avenue, Thorofare, New Jersey 08086. The Debtor will make payments to TD outside of this Reorganization Plan. There will be no debt service coverage or loan to value requirement in

8

Class 3.  Moreover, TD, a secured creditor, has asserted a secured claim against the Debtor in the amount of $3,000,000 (the "TD Debt") as of July 1, 2010.   TD and the Debtor have acknowledged and agreed that TD has, as of July 1, 2010, a valid and subsisting first lien and security interest in:

(1)      certain commercial real property located in Thorofare, West Deptford County, New Jersey (the "Commercial Property") together with , inter alia, all existing or subsequently erected or affixed buildings, improvements and fixtures, all streets, lanes, alleys passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters;

(2)      an assignment of all the Debtor's right, title and interest in and to all present and future rents, revenues, income, issues, royalties, profits and other benefits for the Commercial Property; and

(3)      all equipment, fixtures and other articles of personal property now or hereafter owned by Debtor, and now or here after attached or affixed to the Commercial Property; together with all accessions, parts and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) for any sale or other disposition of the Commercial Property (which collateral collectively shall be hereafter the "TD Collateral").

The Debtor has acknowledged and agreed that the TD Collateral secures the TD Debt,

9

which indebtedness is not subject to defense, offset or counterclaim of any kind or nature and that said debt is an allowed, secured claim under Sections 506(a) and 502 of the Bankruptcy Code.

The existing secured claim of TD shall be paid as follows:

(a)     Debtor shall make interest only payments for six (6) months following the Effective Date. The rate shall be the contract, non-default rate; and

(b)     Commencing with the seventh payment following the Effective Date, the Debtor shall make a monthly payment of principal and interest using a ten (10) year amortization schedule. The interest rate shall by the contract, non-default rate.

4.    **Class 4.**    **Secured Claim of Municipal Tax Liens**.    Class 4 is impaired. The treatment and consideration to be received by holders of Class 4 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims and Liens. The delinquent property tax balance of approximately $385,104 will be paid in equal quarterly installments over 60 months, including accrued interest of 6.00% on the outstanding balance pursuant to the PILOT agreement reached with the township of West Deptford. The Debtor will commence making installment payments to the township at the time of filing this Plan.

5.    **Class 5.**    **Unsecured Claim.**    Class 5 is impaired. Except as otherwise provided herein, the treatment and consideration to be received by Class 5 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens against the Debtor. Debtor intends to pay ten percent (10%) of all Allowed Unsecured Claims to holders of Class 5, over five (5) years consisting of twenty (20) calendar quarters at half a percent (.5%) per quarter. The total claims in Class 5 are approximately $1,644,424.03. To the extent all

10

Unsecured Claims are allowed, quarterly payments to Class 5 claimants would approximate $8,222.12. These payments shall commence sixty (60) days after the Effective Date.

6.    **Class 6.**    **Interest Holders.** All current interests, equity or common stock shall be All current interests, equity or common stock shall be retained by existing equity.

C.    **Administrative Claims.** All Administrative Claims shall be treated as follows:

1.    Time for Filing Administrative Claims. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date. Such notice must include at a minimum (i) the name of the holder of the claim, (ii) the amount of the claim, and (iii) the basis of the claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged. However, any claim which has been previously established by order of this Court, need not be noticed further.

2.    Time for Filing Fee Claims. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within thirty (30) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

3.    Allowance of Administrative Claims. An Administrative Claim with respect to which notice is required and has been properly filed pursuant to Section 4.1(a) this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed

11

Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Fee Claim, and with respect to its fee application having been properly filed pursuant to Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  Allowed Fee Claims shall be paid on the Effective Date or immediately upon entry of an order approving said fees.

4.    <u>Payment of Allowed Administrative Claim</u>.  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) payment in the manner and at such time (including prior to the Effective Date) as may otherwise have been or in the future may be ordered by the Court, or (iv) if arising in the ordinary course such Administrative Claim may be paid in the ordinary course of business by the Debtor, unless otherwise required by an Order of the Court.

5.    <u>Professional Fees Incurred After the Effective Date</u>.  Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid.  Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.  In the event of such dispute, the Debtor shall promptly pay that portion of the fees, if any, which is not in dispute.

6.    <u>Committee Existence.</u>  The Committee shall cease existence as of the Effective Date.  All fees of the Distribution Trustee or counsel to the Distribution Trustee shall be paid from the funds in the Distribution Trust.

**D.** **Treatment of Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of Subsection 1129(a)(9)(c) of the Bankruptcy Code commencing on the Effective Date or (iii) such other treatment as may be agreed upon in writing by the Debtor and such Creditor.

**E.** **Provisions for Execution of the Plan.**

1. **Execution of Documents.** Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

2. **Alterations, Amendments or Modifications.** This Plan may be altered, amended, or modified by the written agreement of Proponents before or after the Confirmation Date, as provided in Section 1127 of the Bankruptcy Code.

3. **Final Decree.** Upon satisfaction of the Claims against and interests in the Debtor as provided in this Plan, the Case shall be closed. Nothing herein shall prevent the Debtor from completing or instituting such proceedings as may be necessary for the enforcement of any claim of the Debtor which may have existed against any third party before or which may exist after Confirmation which may have not been enforced or prosecuted prior to Confirmation.

4. **Corporate Charter.** The Debtor's corporate charter will be amended after the Effective Date to any extent necessary to permit the Debtor to implement the terms of this Plan.

5.    <u>Retention and Enforcement of Claims</u>.  The Debtor shall retain any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

## IV.    **PROJECTIONS AND FEASIBILITY**

Attached hereto and made a part hereof as Exhibit "B" are the Debtor's projections for a five (5) year period.

The Debtor believes that the projections are reasonable and has incorporated conservative assumptions into them, but no assurance can be given that the results shown will be realized. The Debtor also believes that the enclosed projections indicate that the proposed plan of reorganization is feasible.

## V.    **COMPARISON OF LIQUIDATION VS. REORGANIZATION**

As a condition to confirmation of the Plan, Section 1129(a)(7)(A)(ii) of the Bankruptcy Code requires that each impaired class of claims or interests must receive or retain at least the amount or value it would receive if the Debtor would liquidate under a Chapter 7 on the Effective Date of the Plan.

## VI.    **TREATMENT OF EXECUTORY CONTRACTS**

### A.    <u>Assumption/Rejection</u>.

As of the Effective Date, the Debtor will assume all executory contracts, leases, licenses and management agreements (collectively, the "Contracts").

### B.    <u>Damages</u>.

Any Claim for damages arising by reason of the rejection of any Contract will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the

14

Clerk of the Court within thirty (30) days after the date of rejection.  If a Rejection Claim becomes an Allowed Claim then it shall constitute a general unsecured claim under Class 5.

## VII.    EFFECTS OF CONFIRMATION

### A.    Injunction

Except as otherwise expressly provided in the Plan, the entry of the Confirmation order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims of or Interests in the Debtor after the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor thereof, or against the property of the Debtor, with respect to any such Claim or Interest.

### B.    Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Code or otherwise and extant on the Confirmation Date shall remain in full force and effect until the date on which the Debtor is dissolved.

15

C.     **Injunction Against Interference With Plan**.

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.

## VIII.  CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST

In the event that sufficient votes to confirm said Plan are not received, the Debtor and the Committee request confirmation of the Plan pursuant to the provisions to the provisions of Section 1129 (b) of the Bankruptcy Code.

## IX.  MODIFICATION OF THE PLAN

A.     **Pre-Confirmation Modification.**  At any time before the Confirmation Date, the Plan may be modified by the written agreement of both Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

B.     **Pre-Consummation Modification**.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

C.     **Non-Material Modifications.**  At any time, the Proponents may, without the approval of the Court so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in

16

the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## X.    **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

A.    to determine any and all objections in the allowance of claims and amendments to schedules;

B.    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

C.    to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

D.    to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

E.    to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

F.    to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of , or after, the Confirmation Date;

G.    to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

H.    to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

I.      to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

J.      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

K.      to enforce all provisions under the Plan;

L.      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## XI.    CAUSES OF ACTION

A.      **Powers**.  The Debtor, as set forth in Sections 5.5 and 5.7, shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action, without notice to creditors or Court approval from time to time in their discretion.

## XII.    OBJECTIONS TO CLAIMS

A.      **Objection to Claims**

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.

B.      **Contested Claims**

Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtor and the claimant involved, as approved by the Court.  If allowed, the Contested Claim will become an Allowed Claim and

18

shall be paid on the same terms as if there had been no dispute. The need for resolution of Contested Claims will not delay other payments under the Plan. No distribution shall be made to a Contested Claim until it is Allowed.

## XIII.  CHOICE OF LAW

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without regard to the choice of law rules thereof.

## XIV.  EXCULPATION

Following the Effective Date, neither the Debtor, any of its officers, directors, employees or agents, the Creditors' Committee and the members thereof, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

## XV.  MISCELLANEOUS

### A.  Payment of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. The Debtor will pay all post-confirmation fees as required by the Bankruptcy Code.

## B.    Discharge of Debtor

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, any of their assets or properties and the Debtor's Estate. Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against and Equity Interests in the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtor, its successors, or its assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

## C.    Discharge of Claims

Except as otherwise provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtor, the Estate or any of their assets or properties; and upon the Effective Date, all existing Claims against the Debtor, the Estate and all of their assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of claims will be precluded from asserting against Reorganized Debtor, its successors or its Assets or properties any other or further Claim based

20

upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, whether or not the holder filed a proof of claim.

### D.  Effect of Confirmation Order

Except as provided for in this Plan, the Confirmation Order will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Order and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code.

### E.  Severability

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

### F.  Successors and Assigns

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

### G.  Binding Effect

The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Equity Interests, and their respective successors and assigns.

### H.  Governing Provisions

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

## I.    Filing of Additional Documents

On or before substantial consummation of this Plan, the Debtor will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## J.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

Dated: October 1, 2010

**GROVE STREET REALTY URBAN RENEWAL L.L.C.**
*/s/ Thomas E. Hedenberg*
Thomas E. Hedenberg
**CIARDI CIARDI & ASTIN**

*Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103
Counsel to the Debtor and
Debtor-in-Possession

## Liquidation Analysis

### Assets:

| | |
|---|---|
| Office Equipment | $129,000 |
| Real Property | $43,500,000 |
| - Reduction for Foreclosure valuation (20%) | ($8,600,000) |
| - Costs of Liquidation | ($1,000,000) |

Total Assets

$ 34,029,000

### Liabilities:

Secured Debt

| | |
|---|---|
| GE Business Financial | $32,328,683 |
| TD Bank | $3,000,000 |

Tax Claims

| | |
|---|---|
| West Deptford Township Tax | $385,104 |
| Administration fees | $100,000 |
| Outstanding UST Fees | $12,500 |
| Committee Fees | $50,000 |

Total Liabilities

$35,876,287

Total Assets – Total Liabilities:

($1,847,287)

### Funds left for Distribution to Unsecured Creditors:

$0