**DEMBO & SALDUTTI LLP**
By: Michael E. Brown, Esquire
1300 Route 73, Suite 205
Mt. Laurel, New Jersey 08054
(856) 354-8866
Attorneys for TD Bank, NA

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| GROVE STREET REALTY URBAN RENEWAL, LLC | Case No. 10-30427 (JHW) |
| Debtor. | |

### OBJECTION OF TD BANK, NA TO THE DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING THE CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY GROVE STREET REALTY URBAN RENEWAL, LLC

TD Bank, NA (the "Bank"), a secured creditor of the Debtor Grove Street Realty Urban Renewal, LLC (the "Debtor"), by and through its undersigned counsel, respectfully objects to the Disclosure Statement (the "Disclosure Statement") describing the Chapter 11 Plan of Reorganization and in support thereof states as follows:

### FACTUAL BACKGROUND

1. On or about July 28, 2009, the Debtor borrowed the sum of $3,000,000.00 from the Bank.

2. In order to evidence said obligation, the Debtor executed and delivered to the Bank a Mortgage Loan Note (the "Note") in the original principal amount of $3,000,000.00, by which the Debtor agreed to repay, the principal sum borrowed plus interest to be computed in accordance with the terms and conditions of the Note.

3. In order to secure the loan obligation of the Debtor to the Bank under the Note, the Debtor executed and delivered to the Bank a Mortgage and Security Agreement dated July 28, 2009 on the properties located at 196 and 204 Grove Avenue, West Deptford, New Jersey (the "Commercial Property"), which was recorded on August 7, 2009 with the Clerk of Gloucester County.

4. In order to further secure the loan obligation of the Debtor to the Bank under the Note, the Debtor also executed and delivered to the Bank an Assignment of Leases and Rents dated July 28, 2009, on the Commercial Property, which was recorded on August 7, 2009, with the Clerk of Gloucester County.

5. On or about July 1, 2010, the Debtor filed for relief under chapter 11 of the United States Bankruptcy Code (the "Petition Date").

6. The Debtor is operating as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. Following the Petition Date, the Debtor has made the monthly payments to the Bank as required pursuant to the terms of the Orders from the Court authorizing the Debtor's Use of Cash Collateral.

8. On or about October 1, 2010, the debtor filed its Plan of Reorganization and accompanying Disclosure Statement.

## OBJECTION

**I. The Disclosure Statement Should Not Be Approved Because It Does Not Contain Adequate Information as Required by Section 1125(b) of the Bankruptcy Code.**

9. As set forth in the Plan and Disclosure Statement, the Bank is a secured party-in-interest and has standing to file this Objection pursuant to Section 1109(b) of the Bankruptcy Code.

10. Prior to soliciting acceptances of a Plan, a plan proponent must receive approval from the Bankruptcy Court of a written Disclosure Statement containing what the Bankruptcy Court determines to be "adequate information" pursuant to Section 1125(b) of the Bankruptcy Code. The term "adequate information" is defined in Section 1125 as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . to make an informed judgment about the plan . . .".

11. Disclosure requirements are crucial to the effective functioning of the bankruptcy system. *Ryan Operations, GP v. Santiam-Midwest Lumber Company*, 81 F.3d 355, 362 (3rd Cir. 1966). The importance of full and honest disclosure in a disclosure statement cannot be overstated, since creditors and the Bankruptcy Court rely heavily on the Debtor's disclosure statement in determining whether to approve the proposed plan of reorganization. *Id.*

12. The Disclosure Statement should provide holders of claims and interests with sufficient information to evaluate a plan and make a reasonably informed decision on whether to accept or reject a plan. A proper Disclosure Statement must inform an average unsecured creditor of what it is going to receive under the plan, when it is going to receive it and what contingencies there are to receiving that distribution. *See, In re Ferretti,* 128 B.R. 16, 18 (Bankr. D.N.H. 1991); *In re Microwave Products of America, Inc.,* 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989).

13. The determination of whether a Disclosure Statement provides adequate information is made based on the facts and circumstances of a particular case. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3rd Cir. 1988). In order to approve a Disclosure Statement, courts consistently require that the Disclosure Statement contain

information sufficient to enable reasonable hypothetical investors to make an informed decision about whether to accept or reject a proposed plan of reorganization. *See, Ryan Operations, GP*, 81 F.3d at 362.

14. Based upon the facts and circumstances of the present case, the Disclosure Statement proposed by the Debtor, in its current form, lacks adequate information to enable creditors to evaluate and make an informed decision about whether to accept or reject the proposed Plan of Reorganization. The Disclosure Statement is deficient in multiple key areas, including but not limited to the following:

(a) The information provided in the Disclosure Statement with respect to the Bank is incorrect. The Disclosure Statement states that the Bank has a first lien position on the commercial property located at 196 Grove Avenue, Thorofare, New Jersey. However, the Commercial Property consists of both 196 Grove Avenue, Thorofare, New Jersey and 204 Grove Avenue, Thorofare, New Jersey.

(b) The Disclosure Statement does not address how the Debtor intends to fund the Plan of Reorganization. It is assumed that the Debtor will fund the Plan through the rental incomes receives from both the residential property and/or Commercial Property, however, it does not address, the possibility of the Debtor having insufficient tenants to cover its obligations specifically the obligations due and owing to the Bank.

(c) The Disclosure Statement fails to outline the precise terms and conditions of the treatment of Bank's claim. Rather, the Disclosure Statement provides that the Debtor will make payments to the Bank outside of the Plan; that there will be no debt service coverage or loan to value requirement and that the Debtor shall make interest only payments to the Bank for six (6) months following the Effective Date of the Plan. The Debtor then proposes to pay the Bank

monthly payments of principal and interest using a ten (10) year amortization schedule with interest accruing at the contract rate.[1] The Disclosure Statement does not set forth what payments will be made "outside of the Plan" and the amount of those payments. Therefore, it is impossible for the Bank to determine the amount it will receive from the Debtor on a monthly basis. In addition, the Disclosure Statement fails to address the fact that any modification to the payments due and owing from the Debtor to the Bank, such as proposed in the Plan and Disclosure Statement, might render the Debtor in default under its International Swap Dealers Association agreement executed and delivered by the Debtor to the Bank.

(d)     The Debtor does not attach any Operating Reports as an exhibit to the Disclosure Statement, leaving creditors without the ability to access such information and no means to evaluate the Debtor's post-petition business operations without resorting to other documents.

(e)     The Disclosure Statement provides that the Debtor's projections for a five year period are attached as <u>Exhibit</u> B; however, the Disclosure Statement neglects to include said projections.

(f)     The liquidation analysis provides no objective or verifiable basis for the valuation of the Debtor's inventory, assets, real property, etc.

(g)     The Disclosure Statement lacks any true analysis of the feasibility of the proposed Plan, including, but not limited to the means of implementation of the Plan, and the legal issues to be overcome in confirmation of the Plan, such as what happens if the Bank no longer consents to the Debtor's use of the rental income being generated from the Commercial Property, which constitutes the Bank's Collateral as set forth in the Assignment of Rents and Leases.

---

[1] The Bank assumes that the Debtor intends to make monthly payments of principal and interest using a ten (10) year amortization schedule on the seventh (7) month following the Effective Date of the Plan with said payments to continue thereafter on a monthly basis until the Maturity Date of the Note. The Disclosure Statement however provides that the Debtor "shall make a monthly payment of principal and interest . . . ."

    (h)    The Disclosure Statement does not attach any cash flow statement.

    (i)    The Disclosure Statement fails to provide any disclosure with respect to any avoidance actions that may exist.

    (j)    The Disclosure Statement fails to provide any analysis of the benefit to the estate of the administrative expenses associated with this chapter 11 case in comparison to the expenses incurred by a chapter 7 trustee.

    (k)    The Disclosure Statement fails to provide sufficient information regarding the future operations of the Debtor.

15.    The Bank hereby joins in the objections filed by any other parties, to the extent not inconsistent herewith.

16.    All objections to the confirmation of the Plan are specifically reserved and preserved.  Furthermore, the Disclosure Statement should specifically indicate that the Bank does not support the Plan, as proposed, and that the Debtor will be required to seek confirmation of the Plan under the provisions of Section 1129(b).

17.    Accordingly, the Disclosure Statement in its present form represents, at best, a draft outline of the Debtor's hopes for reorganizing.  Much more is required for the Disclosure Statement to approach fulfilling the basic requirements of Section 1125 of the Bankruptcy Code. The Bankruptcy Court should not approve the present Disclosure Statement and should instruct the Debtor to file a revised document and provide for an appropriate opportunity for review and objection thereto.

WHEREFORE, for the reasons set forth herein above, TD Bank, NA respectfully requests that the Court enter an Order denying approval of the Debtor' Disclosure Statement

since the Disclosure Statement fails to meet the requirements of Section 1125 of the Bankruptcy Code.

                                      DEMBO & SALDUTTI
                                      Counsel for TD Bank, NA

                                  By:    /s/ Michael E. Brown
                                          Michael E. Brown, Esquire

Dated:   October 26, 2010